183114 and we have Mr. Bugney and Mr. Wang and so Mr. Bugney you may begin. May it please the court. Under Brady the defendant is entitled to any favorable evidence. The government has to turn it over if it hasn't. Here, Detective Roloff knew about the second undercover operation that he had launched. The fruits of that operation, including the seven hours of recordings, the eight visits while there would have been human trafficking going on at the apartment building, as well as the emails and the failed phone tap, and not to mention the surveillance video. All of that was known to the government at the time of trial and none of it was turned over. The question here is whether or not that evidence was favorable and it showed it not only reinforced the defense's theory that if somebody if some of this stuff would have happened somebody would have seen it and here we would have had four law enforcement officers there to say to testify that they didn't see anything. Are we sure? Go ahead Judge Barrett. You can go Judge Wood. What I was struck by reading this is that looking at your account it sounds as though people were there all the time and maybe you would have noticed people coming and going but looking then at the rest of the record it seems that they weren't they were there sometimes for certain periods of time but I'm not sure so much that the inevitability of spotting this unusual behavior that you suggest comes out to me and of course as you know the district court thought that when all was said and done there was no prejudice in the failure to turn these materials over even if putting that to one side even if it had been a Brady problem. So we know that the investigators are there in eight days. But how many hours? I mean for an hour or 90 minutes at one point? People did come and go. There's no question but we don't know that it was only 90 minutes. That's part of why we asked for the evidentiary hearing. We never had a question about how long the detectives were there, how long the undercovers were there. The district court guessed at 90 minutes that the longest he was someone was there was 90 minutes. Well we have seven and a half hours of recordings. It's impossible to get the seven and a half hours if these are really just brief interactions or they're not there that long. The other question is why are they there at all if not to investigate this and to find it? Why go through all the effort and the expense? It's for agents. They're renting a place. They're going through all these steps. They're going there to find evidence of human trafficking. I have a factual question about that. I thought that was a separate investigation. That quote didn't pan out. Maybe of drug operations? Well sorry your honor. That's what they represented to us in the email. But all of the reports went to Roloff and Roloff was at that point investigating human trafficking. So he's the one who signs the property receipt. He's also the one that the reports go to when they collect the surveillance. The last note I think it's on June 21st is dropped off everything to Roloff. So it's Detective Roloff who's investigating human trafficking is launching this undercover operation. He's the one who assigned the roles. He's the one who decided you know when they would go there. He's the one who initiated the phone tap. So it's not a separate investigation. That's what we were told and that's why we didn't pursue it before trial. It's the same investigation. It's just different investigatory tools. They were looking for human trafficking. But counsel and your entire theory and this kind of overlaps with Judge Woods point. Your entire theory about why this is favorable is kind of the dog that didn't bark theory right? That they showed up maybe seven or eight times only approached his studio once and didn't observe anything. Didn't observe any human trafficking to speak of. And you think that was so favorable that it would have made I'm sorry not even to speak of didn't observe any. But your theory is that that was so favorable that it would have moved the jury to come to a different result or there's a reasonable probability that it would have? Exactly. This was not a strong case for the government. This was a weak case and as the weaker the case the smaller the amount of evidence that we need to say there's a reasonable probability. But here this is actually very strong evidence. This is exactly the type of evidence that Walter that the defense used. And it's not just that they were there a time. It's that that you went and collected the surveillance video and the surveillance video inside the apartment didn't show anything. That's not an insignificant amount of evidence. Nor is it the fact that you talk to Miller for seven and a half hours and never once does he say hey would you like a prostitute? You know I have these girls I'm running these girls. All of that goes to these law enforcement contacts that we would have been able to not just present to the to the jury but to say where is the evidence that they were seeking. It's because the stories that you've been told by the two women what didn't actually happen. Nor did Schumacher or Remazoski's testimony. Was it reliable? Every part every witness here was impeached. This was not a case where there was overwhelming evidence or that there was any physical evidence. Any evidence that actually tied Miller to this. And as you depart from that kind of trajectory where you can say this is a reliable very thorough investigation and you go to impeached unreliable witnesses this evidence really does strike at it. I thought there was evidence tying his number to the back page postings. Sorry your honor you broke up. I thought it wasn't all impeached but we'll put aside clearly the jury didn't think that the impeachment was so strong to render their testimony completely worthless right because it convicted. But I thought it wasn't just testimonial evidence I thought there was some evidence tying Miller to the back page ads. Not that Miller was through that was through testimony of the of the of Breitsky. I thought there was a paralegal from back page who testified. The paralegal said that the cell phone that so they used what was called sorry a Wi-Fi phone you know that you can connect to Wi-Fi and that Breitsky had used that. In fact the two and she posted using that phone she said that she didn't have a phone for various periods of time. So that's where that testimony comes in but it's also when they call I'm saying they the undercovers call Miller Breitsky actually answers twice. So it's she's using this phone she's allowed to use that phone she's actually a guest there. This is a flop house a flop apartment in an efficiency. We never contested that she didn't stay there. So the fact that she had access to the phone and the fact that the phone was posted back page ads doesn't mean that Miller actually used force or coercion. That's the key to it because it's not that these women were at were engaging in prostitution. That we've always accepted and we've understood and we that happened. It's whether or not Miller was the one who forced them and for that their testimony has to be reliable. And part of their testimony is this whole mosaic that they painted of standing there with a bat. Miller controlling them. Miller having collecting the money. Miller doing everything driving everybody out of the apartment so they could do that. Well that's what they were able to bring out though quite a bit of impeachment testimony at this trial. For example you know people going off on vacations and going away for some period of time and coming back which I certainly must have argued indicated a lack of coercion. Whatever they were doing they were doing of their own free will. But the jury didn't buy it. That's correct. Well I mean the jury didn't buy it after being out longer than it took to present the case. You know the fact that the jury ultimately convicted doesn't mean that there's not a reasonable probability if we return. I understand. Did you want to save rebuttal? I would Your Honor. Thank you. Why don't we do that now. So you'll have a little more than two minutes. Mr. Wang. May it please the court. Christopher Wang on behalf of the United States. Your Honors this is a simple and straightforward case. Miller's failure to satisfy any of the three Brady factors is fatal to his claim. In fact he failed to satisfy all three. First with regard to materiality the governance and materiality argument is strong and this court confirmed the district court on this factor alone. Both victims gave detailed and uncontroverted testimony that Miller physically and psychologically forced or coerced them to transactions for his benefit. The victim testimony was corroborated by other testimony from three other witnesses who were in the room at the time of the trafficking and testified that Miller abused the victims, instruct him to post ads and go on dates and kept the money from those dates. So if I could if I understand Mr. Bugney's argument though when those dates showed up at the efficiency apartment everybody else has to clear out off they go into the hall there's activity of people around the building and if somebody's really post in the building and they never notice these bursts of activity when somebody's going out there maybe there were no bursts of activity maybe there was nothing going on in the apartment that the women were unhappy about. I mean they maybe they were lying maybe they were telling the truth but the jury never hears evidence to suggest that they were lying. Your Honor this goes to the issue of favorability. The active investigation of Mertz which I'm going to define as beginning when the officers met Mertz through when Bretzky left Miller's apartment they paid five visits to Greenway Cross the longest of which appeared to be 90 minutes long. The notes do not indicate that the officers ever visited the building second floor much less stop at Miller's apartment until after Bretzky left and that's when Mertz stopped by Miller's apartment to drop off the keys to his storage locker. Do we know do we know that if people were leaving the second floor you would be able to see it on the first floor do we have like a floor plan for the building? We don't know that Your Honor I believe the floor plan indicates that you wouldn't be able to see what's going on in Miller's second floor apartment from the first floor. There's no indication that the officers ever went to the the second floor in any event I thought they went one time. I thought they went to his studio one time. That's correct Your Honor on June the 30th officer Mertz went to Miller's apartment to drop off his storage locker key this was after Bretzky had departed the apartment and Mertz never stepped into the apartment he just basically Miller opened the door and he just gave Miller the key and and left. But the whole notion that officers could have and should have witnessed individuals leaving the apartments during the commercial sex transactions is pure speculation. Bretzky never testified as to when she went on these dates during the times that Mertz and the other officers visited Greenway Cross and Mertz in his notes only indicated once when that when he visited Greenway Cross so there's nothing to say that he could have or individuals leaving Miller's apartment and to the extent that Miller is arguing that individuals walking into the building would constitute indicia of sex trafficking there's absolutely no evidence that no real reason to believe that the act of walking into a commercial building would alert officers to the presence of sex trafficking. Can I move ahead to your it was available anyway argument because I'm very disturbed you know if the government tells somebody this investigation is about something unrelated to the one that you're involved with your position seems to be that people have to assume that the government is lying and pursue it anyway just in case the government's dissembling which hopefully is not the background assumption that we have for U.S. attorney's offices so that's what happened here they asked they got you know kind of a hey it's not about your case and so they they trusted you and they dropped it so it seems to me troubling to think that that you're shaving that close to the border if not outright dissembling. Your Honor the government wasn't trying to hide the ball here this is not like the cam case the government informed Miller that officer Mertz was the undercover officer who is taking this parallel undercover investigation they informed them two weeks before trial. But it was a you didn't call it a parallel investigation you said you told them I don't have the language of the email right memorized but you basically told them that it was related to another case and there are no reports to turn over and so another case means a different case I don't know what else it could mean and so I I think there's a candor issue here. Your Honor the government's basically in that in that email told Miller basically what you know supported their theory of the case the theory of the email said the undercover work was related to another case and there are no reports to turn over okay maybe there were no reports because nobody wrote anything down I I don't know but it's it's not the kind of response that would make you think that you then needed to file a bunch of extra discovery requests yourself you've they they've been told that this wasn't this case. Well they were told that Mertz did not write any reports because he did not discover any evidence of criminal activity and that's exactly. You never called it a parallel investigation you never called it you know an alternative way to pursue whatever it was that Miller was up to in this efficiency unit you gave them the Barrett suggested a few minutes ago maybe it was a drug case maybe there were other people in the same building it's not nothing to say only one unit in the building could have a problem of course. Your Honor Judge Detective Roloff represented that it was a separate investigation the record does not mean to you separate different separate different defense separate something else? Separates to me indicates that it involves an investigation into a different form of criminal activity there's nothing in the record to indicate what the purpose of this investigation was in any event it doesn't have any effect on the outcome of this case because it doesn't change the evidence which is that Mertz and the other officers visited Greenway Cross five times during the active investigation and did not see any  evidence of sex trafficking I think it's important to emphasize that this investigation occurred over two months after Daniels left the apartment and overlapped with Bretsky stay in the apartment approximately three weeks and as I mentioned before the officers never went to the second floor except for one time in which Mertz dropped off the key to the storage locker therefore there's nothing particularly significant about the fact that they did not witness witness any indicia of sex trafficking and I'd like to point out that Miller conceded that there was sex traffic commercial sex trafficking going on that's Daniels and Bretsky were acting as prostitutes and the only issue here is whether Miller coerced Daniels or Bretsky into engaging in commercial sex transactions and nothing that Mertz or the other officers saw addressed this particular issue moreover none of this none of the evidence in Mertz's notes or audio recordings implicated much less much less undermined the witnesses testimony this is a much different case in the Walter case in which the alleged Brady evidence directly implicated the credibility of one of the government's key witnesses right here you have the none of the officers ever met any of the individuals either victim or any of the other other individuals who testified as to the sex trafficking going on never met them while the sex trafficking was going on so they really you know what what they saw or didn't see has no bearing on whether the sex trafficking actually took place and I guess sort of going back to your suppression point judge would you know I don't think it's necessary for the court to address this issue I think the government's case on both the favorability and materiality factors is so strong so if the court if this court is somewhat troubled by that I don't I don't think the court needs to address that I think that basically we have the five visits and these visits do not undermine the witnesses testimony don't they don't speak to whether Miller coerced Daniels or Britain Bradsky into engaging in commercial sex transactions all right I mean anything further uh if the if the panel doesn't have any additional questions I would just respectfully request that they affirm the judgment of this report all right thank you very much mr. bug me a few points one they're there eight times looking for evidence of human trafficking before Bradsky's arrested mr. bug me why does it matter why they were there I mean it seems to me your basic point is we happen to know that there were more witnesses in this building even if they had been people opening up a new little business maybe they would have seen a bunch of people leaving the apartment a bunch of people going back in so I'm not sure why the fact that they happen to be police officers either for sex trafficking or for drug trafficking or anything else what your main point seems to be is that they didn't see any evidence corroborating the theory of the sex trafficking that that's a very big point but it's also that they're trained police officers looking for the evidence of human trafficking they're there at Roloff's behest Roloff directs them in there and he's in the midst of a human trafficking investigation so the idea that they don't go up to the second floor just because the notes don't speak of it doesn't mean that they didn't do it or that we don't have the right to actually have an evidentiary hearing to examine what they did do that's the problem with this why are they there if they're not there to go and gather evidence then why does Roloff launch this investigation Roloff has launched this investigation they're looking for evidence of human trafficking and it borders on incompetence to not go up to the second floor or not say let's figure out why are these people coming in or what substantiates this story what did the surveillance video show all those are critical points they gather surveillance video I mean that that should be the best evidence there we don't know that and that's what a jury wants to know the jury wants to know about the mosaic of evidence the puzzle pieces that are put together and they say this is all that leads to a reasonable doubt and that's the standard here the reasonable probability of a different verdict and all of that would go to whether or not these witnesses could be believed by allowing this to be affirmed it's really just sanctioning not only the misgivings and misdirection that we were exposed to but it's also saying yeah you can just go and open it into a separate case file you don't have to keep discovery the way that rule 16 demands it you know defense attorneys you don't even get your client statements and you don't get all the reports that are out there and you don't get everything else that would bear on materiality this case was far from a foregone conclusion in this case should be remanded with ability for us to actually present this evidence to a jury all right well thank you very much thanks to both counsel we'll take the case under advisement